## DE BLONDEAU v. FAULKNER et al.

(First Division.  Juneau.  February 27, 1914.)

No. 1022–A.

1. PLEDGES ⬤═⧐11—MASTER AND SERVANT—POSSESSION OF PROPERTY.
   The plaintiff was placed in charge of the property of his employer, the Alaska T. & T. Co., with the agreement that he should watch it and hold it as a pledge to secure the debt due him. He was given an agreed lien on it to secure the sum due him for services. The defendant in this case, the United States marshal, seized the property under a writ of attachment in a suit brought by an attaching creditor of the Alaska T. & T. Co. On suit by the watchman against the marshal for damages, *held* that the possession of the property by De Blondeau, the watchman and alleged pledgee, was the possession of his employer, the Alaska T. & T. Co., to whom the property belonged when seized by the marshal under the attachment, and the watchman, having no special property or ownership therein, cannot maintain this action. Nonsuit granted.

2. PLEDGES ⬤═⧐11—LIEN.
   In order to constitute a valid pledge, there must be an immediate, actual, and continued change of possession of the property to the pledgee, as against creditors or subsequent purchasers or incumbrancers in good faith; and such change of possession requires the pledgee to hold the property exclusively as a security for the payment of the debt for which the property is pledged.

J. H. Cobb, of Juneau, for plaintiff.
Hellenthal & Hellenthal, of Juneau, for defendants.

JENNINGS, District Judge.  In the matter of the motion for nonsuit in this case, my decision is as follows:

The testimony shows that defendant Faulkner took the property under and by virtue of a writ of attachment, valid on its face.  If the real ownership of the property was in Alaska Trading & Transportation Company, and De Blondeau was its agent or caretaker, then the attachment was properly levied by the marshal taking the property into his custody. The evidence of plaintiff shows that the property belonged to the Alaska Trading & Transportation Company, notwithstanding the dogmatic assertion of plaintiff that the property was his. Almost his every word shows that all he ever claimed to have

was the right to hold the property for his debt. This right he does claim, because the Alaska Trading & Transportation Company said to him in substance:

"We will pay you $50.00 per month to take care of this property, to guard it, to be watchman of it, and you can also hold it as a pledge to secure your debt; that is, we give you a lien on it for your debt."

It is hard to distinguish this proceeding from that in Bailey v. Davis, 19 Or. 217, 23 Pac. 881, so far as the governing principle is concerned. The principle laid down there was that, while the relation of master and servant continued, the servant could not have any separate or independent possession of the property which he was employed to guard, because the possession of the agent is the possession of the master, and in the performance of any service or authority the agent represented the master, and if the agent has no independent complete possession, he can have no lien.

In the Bailey-Davis Case, it is true, Cripe was only a lessee, but that can make no difference in the principle. Cripe was the possessor sufficient to allow an agister's lien to attach if there could have been a lien under the circumstances. The court held that there was no lien, not because Cripe was not the owner, but because he had never parted with the possession. Cripe, being the lawful possessor, had expressly consented that the herder should have a lien; but it availed not—the court saying:

"The defendant's relation to Cripe was that of a servant, and the relation of master and servant, and none other, existed between Cripe and the defendant. * * * Nor while said relation of master and servant continued, could he . [the herder] have any separate or independent possession of said property."

"Delivery of possession of goods to the pledgee may be actual, constructive, or symbolical; but it must be clear, unequivocal, complete, and effective." 31 Cyc. p. 801, and other cases cited.

The case of Jackson v. Kincaid, 4 Okl. 554, 46 Pac. 587, shows how complete the possession of pledgee must be. The syllabus of that case is as follows:

"In order to constitute a valid pledge, there must be an immediate, actual, and continued change of possession of the property" to the pledgee, "as against creditors or subsequent purchasers or encumbrancers in good faith; and such a change of possession requires the pledgee to hold the property exclusively as a security for the payment of the debt for which the property is pledged."

31 Cyc. p. 847, cited by plaintiff, has this proviso:

"But as against pledgor or any one claiming through him, the pledgee is entitled to recover only the amount of his debt, or, if his debt is greater than the value of the property, such value with interest to date of judgment. Where the conversion is by an officer, acting under a writ of attachment or execution, against the pledgor, legal and regular in all respects, such officer occupies the same position as the pledgor, and is liable to the pledgee only to the same extent."

Therefore, if the marshal occupies the same position that the pledgor would occupy, it is difficult to see where any right of action inures to De Blondeau. Would not the pledgor have had the right to return to Alaska and say to the pledgee:

"I will take over the custody of my horses as before, continuing you in my employ."

Suppose he does so, and the plaintiff then says:

"No; I will not let you use those horses, because I have a lien upon them for my wages."

We can imagine him saying that. What would be the reply of the pledgor? Could it not be this:

"You have no lien; you are my servant. You are managing and taking care of the property for me. It is true I told you that you might hold it for your pay, but that does not alter the fact that you are my servant, taking care of this property for me. The servant cannot have a lien on the employer's goods so long as the relation of master and servant continues as to those goods. Your possession has been my possession. There has never been any termination of the possession which I held. You are my servant, and consequently you cannot have any possession as against me, because that would be incompatible with your relation of servant to me. In order for you to have a claim of lien on that property as against me, it would be necessary that the relation of master and servant should have ceased, and the possession of the property ended under that transaction."

Would not this question be perfectly sound? If, then, the pledgor could take that position, and if, as stated in Cyc., the marshal, with a writ valid on its face, occupies the same position as the pledgor, then the position taken by plaintiff cannot prevail.

Counsel for plaintiff has cited the court many cases to overthrow the force of Bailey v. Davis; but the cases cited by him go no further than to hold that, if the bailee or pledgee has a special ownership in the property, he may make that special

ownership the basis of his suit. The reason the cases cited by him are not applicable here is this: The plaintiff in this case had no special ownership in the property which could at all avail against the attaching creditor, because he had none which could avail against the attachment debtor, his principal, his employer.

The relations between the parties are not the same. The distinction is very important. It is this: In the cases cited by Mr. Cobb, the relation of bailee is one of the premises on which the conclusion is based. Here there is no bailment. There is only the relation of master and servant, and that relation, while it continues, precludes the existence of the relation of bailor and bailee.

Not only that, but I fail to see where any actionable wrong has been committed. If it be conceded that plaintiff had a special ownership, yet it cannot be denied that the Alaska Trading & Transportation Company were general owners, and that the property was levied upon by their attachment creditor as being their property. This the plaintiff in the attachment suit had a right to do. The marshal had a right to take the property into possession, because he had a right to levy on Alaska Trading & Transportation Company's interest. In doing so he would have to take care not to injure De Blondeau's interest. But how has he injured De Blondeau's interest? The latter gets the property back in as good condition as it was when Faulkner seized it. Suppose the Alaska Trading & Transportation Company had taken the property out of De Blondeau's possession, and after keeping it for a few days had returned it to him in as good condition as when they took it? Will it be maintained that De Blondeau could prevail in an action against them for the rental value during those few days? I apprehend the affirmative of that cannot be maintained, and yet the same principle which would support one position would justify the other.

This question then remains:

It is alleged in the complaint that the value of the property attached was $1,500 or more, and the debt for which the attachment was levied was only two hundred and some odd dollars; and it is further alleged in the complaint that this attaching property worth $1,500 for a debt of only $200 was a result of a conspiracy between the marshal and the plaintiff in the attachment; and it has been suggested that suit could be

maintained in the name of the plaintiff, because he was trustee of an express trust.

I do not think this position is at all tenable.

Mr. Pomeroy, in his work on Code Remedies (3 Ed.) p. 218, at the end of section 174, says:

"It is abundantly settled that an agent cannot sue in his own name to enforce an implied liability of his principal; if by any possibility he should be a trustee, he would not be the trustee of an express trust."

I am loath to take any case from the jury, but I do not see anything in this case for the jury to pass on. The motion for nonsuit will be granted.